**STANFORD et al. v. STANFORD.**

No. 9617.

Court of Civil Appeals of Texas. Austin.
March 12, 1947.

Rehearing Denied April 2, 1947.

W. S. Leslie, of San Angelo, for appellant Velma Stanford.

W. W. Tupper, of San Angelo, for appellant Betty Jandolyn Stanford.

Upton, Upton & Baker, Neill & Lewis, and Glenn R. Lewis, all of San Angelo, for appellee.

HUGHES, Justice.

Virgil L. Stanford, appellee, sued Mrs. Velma Stanford, appellant, and others to annul a judgment under which appellant and appellee were granted the adoption of Betty Lou Watkins, a girl, one year of age. The case was tried without a jury. Findings of fact and conclusions of law were filed by the trial court.

From these findings it appears that in January 1945 appellant and appellee, who were then husband and wife, went to Brownwood, Texas, and obtained the custody of the child, with the consent of her mother, with a view of eventually adopting her. The child was kept in their home until September 3, 1945, when they filed an application for her adoption in the court below. The trial court appointed the county probation officer of Tom Green County to investigate the surroundings of the child and applicants' suitability, and on September 6th he filed his report recommending such adoption. On September 7, 1945, the adoption was granted. Appellee left all matters pertaining to the adoption to his wife. On September 21, 1945, appellant sued appellee for divorce in the District Court of Tom Green County, 119th Judicial District; and on March 5, 1946, she obtained a divorce, the custody of their two adopted children, and an order requiring appellee to pay $40 per month for the support of their two adopted children. Appellee did not know at the time of the adoption, or at any time prior thereto, that appellant intended to abandon and divorce him; nor did the trial court in this cause know of such intention until the divorce suit was filed on September 21, 1945. That appellee would not have signed the application for adoption if he had known of appellant's intention to abandon and divorce him; nor would the court, if it had been advised of such intention, have granted the application for adoption. The court further found that at the time of the adoption proceedings and prior thereto the parties hereto had had quarrels and troubles between themselves; and if the court had been advised of this trouble at the time of the adoption it would not have been granted. The court found that it is now to the best interest of said child that the order of adoption be set aside.

Judgment was entered, in accordance with these findings, annulling the judgment of adoption; hence this appeal.

The finding of the trial court that he would not have granted the adoption, if he

had known that there was discord in the home of applicants and that divorce was in the immediate offing, bespeaks a commendable attitude on his part.

The problem now, however, is not the propriety of granting the adoption in the first instance, but whether the adoption so granted should now be set aside.

In determining this question we are bound by the following principles announced by the Supreme Court in Hursey v. Thompson, 141 Tex. 519, 174 S.W.2d 317, 319:

"* * * We think, further, that in a suit to set aside a child adoption judgment the trial court has the right, and is burdened with the duty, to see that the rights of the child are protected. Finally, we think the rights of a child under a judgment of adoption are rights that cannot be admitted away by any person or party. In a child custody suit between two parties the rights and welfare of the child are the paramount things to be considered. We think the same rule should apply to a suit to set aside an adoption judgment. The rights of the child must be carefully guarded and considered."

In support of the finding of the trial judge that it is to the best interest and welfare of the child that the judgment of adoption be canceled, appellee makes the following statement in his brief, which we copy in full:

"Mrs. Stanford testified that she had not remarried, and there was no immediate prospect of her marrying, that she lived with her mother and father, ages 60 and 67, respectively."

This, apparently, is all of the evidence which appellee could find in support of this finding. We have carefully read the entire statement of facts with the same result. Whatever may be said for or against successive marriages, we are certain that the penalty for failure to re-marry or to be without the immediate prospect of re-marriage eight months after divorce, should not be the loss of children, natural or adopted. Although appellee married within a few months after the divorce, he has no right to complain of appellant's failure to do so.

That appellant and her two adopted children live with her father and mother during this period of trouble and adjustment is not only without stigma but very prudent on her part and generous on the part of her parents.

There is ample evidence in the record, not questioned by appellee, that this child has a good home and is well cared for by appellant.

Appellee also stresses in his brief the short lapse of time between the decree of adoption and the filing of the suit for divorce, this in support of his assignments that fraud was practiced upon him and the trial court. Considered alone this might show a plan on the part of appellant to take undue advantage of appellee in requiring him to support the adopted child without the compensation of companionship. This is not, however, the complete picture. The adoption proceedings were initiated in January 1945, when both parties went to Brownwood and procured for adoption the child which they kept in their home for more than eight months. It is not at all unnatural that during this period appellant should become so attached to the child that she, sensing the course of her marriage, pushed the adoption proceedings to final culmination. Appellant, in perfecting the adoption and resisting this suit to annul it, has shown that she is willing to perform the moral obligations which she and her then husband assumed in January 1945, when they procured the baby with the intention of adopting her. The attitude of appellee is just to the contrary. His only concern is purely selfish. He testified that if someone else would support his adopted children, he would never see them again. He seems to forget that he participated in taking this child from her mother at a time when she was of an age more desirable for adoption; that appellant has grown to love the child; that the child is now almost three years of age, and that appellant will have the responsibility of the care of such child. He makes no suggestion for the child's benefit or welfare. He shows no concern for the child's future. He is willing to cut the child adrift, without name, without home, and without a foreseeable future—all for $20 a month. It is true that appellee will not be with the child. This is his own fault. He has been adjudicated guilty of wrongful conduct towards his wife by the judgment rendered in the divorce suit, which, by the way, was not a formal affair, but a bitterly contested case,

in which he was represented by two able attorneys. In this same suit he also lost the custody of his two adopted children.

While appellee may not have known when this child was formally adopted, that his wife intended to divorce him, he certainly should not have been much surprised, in view of the hectic state of their domestic life; but even so, he cannot take advantage of his own wrongful conduct to the detriment of this child.

The adoption of a child is wholly voluntary and should not lightly be undertaken; nor should mental reservations on the part of adopting parents, with reference to the course of future events, be countenanced.

█ We are of the opinion that the finding of the trial court that it would be to the best interest of this child that the judgment of adoption be annulled is without evidence to support it, but that just the contrary is shown; and that appellee's attack upon this judgment is wholly lacking in equity.

The judgment of the trial court is reversed and judgment is here rendered that appellee take nothing by his suit.

Reversed and rendered.