**B. I. MURPHY et ux., Appellants,**

v.

**The CITY OF BEAUMONT et al., Appellees.**

No. 6943.

Court of Civil Appeals of Texas.

Beaumont.

Oct. 26, 1967.

Rehearing Denied Nov. 15, 1967.

———◆———

Weller, Wheelus & Green, Beaumont, for appellants.

Keith, Mehaffy & Weber, Benckenstein & Norvell, Beaumont, for appellees.

STEPHENSON, Justice.

This is a suit for damages brought by plaintiffs, B. I. Murphy and wife, Zita Murphy, for personal injuries sustained by Mrs. Murphy when she fell in the Beaumont City Auditorium. Defendants are the City of Beaumont and the Beaumont Music Commission. Summary judgments were granted for both defendants. The parties will be referred to here as they were in the trial court.

Plaintiffs' sole point of error is that the trial court erred in holding that their cause of action was barred under the doctrine of volenti non fit injuria. It is alleged that plaintiffs purchased tickets and were attending a Peter Nero piano concert which was sponsored by the Beaumont Music Commission in the City Auditorium. The undisputed facts showed: That plaintiffs were seated in the lower balcony in the second or third row from the bottom. That the lights came on at intermission and Mrs. Murphy went to the restroom located on the first floor. That when she returned to the balcony the lights were out and Peter Nero was playing the piano. That she fell and was injured as she walked down the stairs toward her seat. That she fell because she could not see.

Mrs. Murphy's deposition showed: That she went to the restroom at intermission. When she returned to her seat the restroom lights were on and the hall lights were on, but upon opening the door to enter the balcony the lights were out in the auditorium. The lights were on on the stage where the artist was playing. Mrs. Murphy's deposition read in part as follows:

"A. It was so dark that I was holding on to the seats as I walked, and I thought I was to the bottom there, and there was one more step."

"A. I thought I was to the bottom, it was so dark I couldn't see, and I stepped off."

"A. Well, I was walking down the steps holding onto the side seats there the best I could, kind of leaning as I remembered, and just getting down those steps."

"Q. And you said you had your hand onto the chairs?

' A. As I remember."

"Q. And you were using them to walk down?

A. I was using them as a guide to get down, looking at the rows as I went down, looking at each step."

Mrs. Murphy also testified: That she had lived in Beaumont 27 years and probably had not been in the auditorium more than 15 times. That this was the first year she had a card for all of the performances of the Music Commission and the second one she had attended this year. The first time she sat in approximately the same position. She had been in the balcony half of the

times she had been in the auditorium. That there was nobody to escort her back to her seat. She did not look for anybody nor call anybody to help take her back to her seat. She was not aware there were ushers with flashlights.

■■ The defendants in this case were under a duty to Mrs. Murphy, as an invitee, to exercise ordinary care to keep the premises in a reasonably safe condition, so that an invitee would not be injured. Assuming both defendants knew that it was not safe for a person to walk down the steps of the balcony in the darkness, then the defendants were under a duty to warn invitees of such danger. It is now well established in this state that such duty does not extend to an invitee who has actual knowledge and appreciation of such danger, or where the danger is so open and obvious, that such invitee is charged in law with knowledge and appreciation of such danger. Halepeska v. Callihan Interests, Inc. (Tex.), 371 S.W.2d 368.

It is further written by the Supreme Court of Texas in such case as follows:

"The *volenti* doctrine is an affirmative defense. 'Volenti' is a contraction of the Latin phrase, *volenti non fit injuria,* which means legally that a plaintiff may not recover for an injury to which he assents; that a person may not recover for an injury received when he voluntarily exposes himself to a known and appreciated danger. In this state, the decision to incur the risk must have been deliberate; i. e., made with knowledge and appreciation of the danger so that it may be said that the person acted as a result of an intelligent choice. Wood v. Kane Boiler Works, 150 Tex. 191, 238 S.W.2d 172 (1951). Logically, a plaintiff cannot make an intelligent choice to confront a risk if he does not actually know of the danger, or know such facts as would in law charge him with knowledge of the danger and appreciation thereof. Thus, while the cases speak of the requirement of *actual* knowledge and appreciation, the plaintiff may not close his eyes to obvious dangers; and he may not recover where it is shown that he is in possession of facts from which he would be legally charged with appreciation of the danger. Schiller v. Rice, 151 Tex. 116, 246 S.W.2d 607 (1952)."

■ Applying this legal test to the factual situation in the present case, was the danger of falling because of the attempt to walk down the steps in the darkness actually known and appreciated by Mrs. Murphy, or was such danger so open and obvious that she was charged in law with knowledge and appreciation of such danger? We have concluded that both questions should be answered in the affirmative.

The danger in this case was not one which was unknown to Mrs. Murphy. Each of the elements, the stairs and the darkness, were admittedly known by her, regardless of the number of times she had been in the auditorium. When Mrs. Murphy returned to the balcony as she stepped from the lighted hallway, she could see that the balcony was in total darkness and she knew she would have to go down steps to return to her seat. She said she knew it was dark when she walked into the auditorium. Even though Mrs. Murphy was not directly asked the question, and did not testify that she appreciated the danger, her testimony shows that she did. Her testimony as to the manner in which she was descending the stairs clearly demonstrates her state of mind. She said that she was walking down the stairs, holding on to the side seats and leaning, and this action is better evidence as to appreciation of danger than a direct answer to a question would have been.

Affirmed.